IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANKLIN VEGA, ET AL. | : | |
| | : | |
| Plaintiffs | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO. 08-CV-05932 |
| COLUMBIA BOROUGH, ET AL. | : | |
| | : | |
| Defendants | : | |

## **MEMORANDUM OPINION**

Before the Court is Defendants' "Motion to Dismiss Portions of Plaintiff's Complaint" (Doc. No. 10). This is a civil rights action that arises out of a May 6, 2008 encounter between Franklin Vega, his two-year-old-son, Benjamin Vega, and two police officers from the Columbia Borough Police Department. For the following reasons, the Motion is granted in part and denied in part.

## **Background**

At approximately 10:30 p.m. on May 6, 2008, Plaintiff Franklin Vega ("Vega") heard someone knocking on the front door of his home in Columbia Borough. When Vega answered the door, two police officers from the Columbia Borough Police Department demanded that Vega identify himself and step outside to talk with them. Fearing for his safety, Vega refused to step outside but told the officers that he would speak with them through a first-floor window. The window was located in the Vega family's bedroom. Through the now-open, first-floor window, Vega questioned the police officers' purpose for appearing at his residence. The police officers did not reply. One of the police officers, Defendant Edgar L. Mann ("Mann"), would

later testify[1] that he intended to cite Vega for harassment based on an encounter that Vega had with a neighbor earlier that evening.

The police officers continued to demand identification from Vega. In an attempt to comply, Vega reached into his pockets to retrieve his identification. Mann would later testify that he knew Vega was reaching for a telephone, not a gun or a weapon. Shortly thereafter, the officers threatened to go into the house if Vega would not step outside and speak with them. Unsatisfied with Vega's responses, Mann drew his taser gun, aimed it at Vega, and pushed the first-floor window fully open. Vega either placed both of his hands on an interior wall or raised them above his head. Vega told Mann that his identification was in his back pocket. By this time, Plaintiff Benjamin Vega, Vega's two-year-old son, had awoken from his sleep. He had been sleeping in the first-floor bedroom that contained the window through which Vega and the officers were speaking. Seeing his son awake, Franklin Vega scooped Benjamin up in his arms to get him out of Mann's taser gun's line of sight.

By this time, Defendant Officer Zimmerman ("Zimmerman") had crawled through the first-floor window and into the Vega family's bedroom, where both Vega and his two-year-old son were located. With Zimmerman inside the house, Mann trained his taser gun on Franklin Vega again and fired his gun through the window. The electric leads struck Franklin Vega. Franklin Vega was able to place Benjamin Vega on the floor before Franklin Vega collapsed onto the floor, convulsing in pain. After pulling the leads from his body, Franklin Vega righted himself only to be struck two more times by Mann's taser gun's electric leads. Shortly thereafter,

---

[1] Plaintiffs allege that Mann offered this testimony at Franklin Vega's preliminary hearing on charges that were filed as a result of this encounter. (Compl. ¶ 31.)

Franklin Vega was placed under arrest for disorderly conduct, resisting arrest, and terroristic threats.[2]  Later that evening, after the police officers failed to remove one of the electric leads from Franklin Vega's clavicle, Franklin Vega was taken to hospital where a physician removed the lead with the help of pliers.

Franklin Vega filed a seven-count Complaint on behalf of himself and Benjamin Vega, his two-year-old-son.  Franklin Vega sued Officers Mann and Zimmerman in their official and individual capacities, the Columbia Borough Police Department, and Columbia Borough.  The causes of action include the following: assault; battery; violations of the Fourth and Fourteenth Amendments, actionable here through Section 1983, based on an unconstitutional seizure, excessive force during an arrest, and malicious prosecution; declaratory judgment; the negligent infliction of emotional distress; and the intentional infliction of emotional distress.

Defendants filed the instant Motion to Dismiss.  Defendants move that the Court dismiss all claims based on the Fourteenth Amendment, all claims against Columbia Borough and the Columbia Borough Police Department, the negligent infliction of emotional distress claim, and the malicious prosecution claim.  Plaintiffs concede that the Fourteenth Amendment claims are improper as independent bases to sue through Section 1983 under these facts and do not object to their dismissal.  (Plfs.' Resp. II.A.)  Thus, the Court will limit counts two and three to violations

---

[2] It is not clear whether these charges were actually filed against Vega.  See (Compl. ¶¶ 49, 60).  Plaintiffs aver that the charges of Endangering the Welfare of a Child and Harassment were *nolle prosequed* by the District Attorney's Office, but they do not discuss the Disorderly Conduct, Resisting Arrest, or Terroristic Threats charges beyond the allegation that Mann told Vega that he was under arrest for those charges.  See (Id. ¶¶ 49, 60).

of the Fourth Amendment[3] without any further analysis.  The Plaintiffs also concede that the claims against the Columbia Borough Police Department are improper.  (Plfs.' Resp. II.C.)  Thus, the Court will dismiss all claims against the Columbia Borough Police Department without any further analysis.  Lastly, the Plaintiffs also concede that they cannot sustain a claim for malicious prosecution.  (Plfs.' Resp. II.D.)  Thus, the Court will dismiss count four without any further analysis.  Therefore, the only remaining issues raised by the instant Motion are (1) whether Columbia Borough is a proper defendant in this civil action and (2) whether the Plaintiffs' negligent infliction of emotional distress claim is viable under the facts alleged.

## Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009) (citations and quotations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id.

---

[3] The Court notes that the Fourth Amendment of the United States Constitution is made applicable to the states by operation of the Fourteenth Amendment's Due Process Clause.  See, e.g., Maryland v. Pringle, 540 U.S. 366, 370 (2003); Soldal v. Cook County Illinois, 506 U.S.56, 61 (1992); Ker v. California, 374 U.S. 23, 30 (1963); Mapp v. Ohio, 367 U.S. 643, 655-56 (1961).

**Analysis**

A.    **Municipal Liability & Section 1983 - Counts Two and Three**

The Court must determine whether Columbia Borough is a proper defendant in counts two and three. Counts two and three are based on violations of the Fourth Amendment, which is actionable here through Section 1983. Count two is based on an alleged illegal search and seizure. Count three is based on the alleged use of excessive force during the course of a seizure. Both counts are styled as Monell claims against Columbia Borough for the Borough's failure to train and instruct its officers.

Municipalities, like Columbia Borough, can be found liable under Section 1983 where the municipality itself caused the constitutional violations at issue. See City of Canton v. Harris, 489 U.S. 378, 385 (1989) (discussing Monell claims in the context of failure to train allegations). In City of Canton v. Harris, the Supreme Court held that municipal liability may exist where "[a] failure to train amounts to deliberate indifference to the rights of persons with whom the police came into contact," and that deliberate indifference was the moving force for the violation of the plaintiff's federally protected right. Canton, 489 U.S. at 387-92. Thus, City of Canton v. Harris stands for the proposition that a claim for municipal liability will lie where a plaintiff can identify a particular deficiency in training and prove that the specific deficiency was the factual and legal cause of his or her constitutional injury. See also Hall v. Raech, No. 08-5020, 2009 WL 811503, at *5 (E.D. Pa. Mar. 25, 2009) (denying motion to dismiss failure to train claim where plaintiff alleged that municipality failed to train officers in distinguishing between medical emergencies and criminal activity). Plaintiffs allege that Columbia Borough is liable for two constitutional injuries, though both are characterized as violations of the Fourth Amendment actionable here

through Section 1983, on the basis of Columbia Borough's failure to train its officers.

    i.    <u>Count Two</u>

At count two, Plaintiffs allege that Franklin Vega was subjected to an unconstitutional seizure in violation of the Fourth Amendment.  The seizure was unconstitutional, according to the Plaintiffs, because the officers "lacked probable cause" and effected the arrest and entry into his home "without a warrant."  (Compl. ¶ 73.)  As to the liability of Columbia Borough, Vega alleges that "[b]y policy and practice, Defendant Columbia Borough has failed to train its officers regarding the proper protocols regarding arresting citizens for summary offenses [and this] policy and practice permits unconstitutional police procedures."  (<u>Id.</u> ¶ 74.)  <u>See</u> <u>also</u> (<u>Id.</u> ¶ 62) ("The lack of adequate training of Columbia Borough police officers in the areas of warrantless search and seizure protocols constitutes deliberate indifference to the constitutional rights of plaintiff, and is a policy, custom, or practice of Columbia Borough for purposes of imposing municipal liability.")

As required by <u>Monell</u> and its progeny, the Plaintiffs identify a "policy and practice" of the Columbia Borough that constitutes deliberate indifference to the constitutional rights of citizens—namely, failing to "train its officers regarding the proper protocols regarding arresting citizens for summary offenses"—and allege that the "policy and practice" caused the alleged Fourth Amendment violation complained of by Franklin Vega—namely, being subjected to a seizure that was neither based on probable cause nor a warrant and involved the unconsented-to entry into Vega's home by Zimmermann.  Accepting these allegations as true, as the Court must at this stage of the litigation, the Court cannot and will not dismiss count two as to Columbia Borough as these allegations are sufficient to state a claim against Columbia Borough.

ii.     Count Three

At count three, Plaintiffs allege that Franklin Vega was subjected to excessive force during his May 2008 arrest when an officer of the Columbia Borough shot Vega with his taser gun three times after Vega refused to exit his house upon command by the officer and his partner. As to Columbia Borough's liability, Plaintiff's allege that "[t]he lack of any policy or training for officers regarding proper taser gun use and deployment as well as a failure to train its officers in the proper protocol regarding the removal of the taser darts imbedded in a person constitutes deliberate indifference to the constitutional rights of plaintiff, and is a policy, custom, or practice of Columbia Borough for purposes of imposing liability."  (Compl. ¶ 63.)

Again, Plaintiffs identify a "policy and practice" of the Columbia Borough that constitutes deliberate indifference to the constitutional rights of citizens—namely, failing to create a policy or train officers regarding "proper taser gun use and deployment as well as a failure to train its officers in the proper protocol regarding the removal of the taser darts imbedded in a person—and they allege that the policy caused the constitutional injury complained of by Franklin Vega—namely, excessive force in the context of his arrest that involved three shots from the officer's taser gun.  Accepting these allegations as true, as the Court must at this stage of the litigation, the Court cannot and will not dismiss count three as to Columbia Borough as these allegations are sufficient to state a claim against Columbia Borough.

**B.      Governmental and Official Immunity & Negligent Infliction of Emotional Distress - Count Six**

Defendants move that the Court dismiss count six, the negligent infliction of emotional distress claim, because the Defendants are immune under the Pennsylvania Political Subdivision

Tort Claims Act.  See 42 Pa.C.S. § 8541-8564 (governmental and official immunity).  Count six is brought by Franklin Vega on behalf of his two-year-old son Benjamin, who witnessed the shooting of his father and continues to suffer trauma, anxiety, and emotional distress.  (Compl. ¶¶ 56-58, 91-94.)  Defendants neither make a distinction among themselves as to who is immune under the Tort Claims Act (i.e. the Borough, Mann, or Zimmerman, or all of them) nor do they specify which subsection applies to the respective defendants.  Thus, the Court will analyze the Defendants' asserted defense with respect to each of the remaining Defendants.

      i.      Columbia Borough and Governmental Immunity

"No local agency shall be liable for any damages on account of injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa.C.S. § 8541 (setting forth general rule for governmental immunity); see also 42 Pa.C.S. § 8501 (defining local agency as a "government unit other than the Commonwealth government").  However, there are eight enumerated exceptions to the general grant of governmental immunity that are based on the negligent acts of the local agency itself or its employees acting within the scope of their employment with respect to eight categories.  See 42 Pa.C.S. § 8542(b) (enumerating the eight categories, which include vehicles, the care, custody or control of personal and real property, trees, traffic controls, and street lighting, utility service facilities, streets, and sidewalks).  "[T]he exceptions set forth in § 8542 should be narrowly construed." Roby v. Chester County, 946 F. Supp. 333, 338-39 (E.D. Pa. 1996).  A negligent infliction of emotional distress claim, as alleged here, does not fit within any of the categories set forth in Section 8542(b).  Thus, Columbia Borough is immune from suit at count six.  See Heckensweiler v. McLaughlin, 517 F. Supp. 2d 707, 719 (E.D. Pa. 2007) (ruling that township was categorically

immune from negligent infliction of emotional distress based on Section 8542).

ii.  Officers Mann and Zimmerman and Official Immunity

Pennsylvania's immunity scheme applies to local agency employees, like Officers Mann and Zimmerman, as well.  Under Pennsylvania's Political Subdivision Tort Claims Act,

> [a]n employee of a local agency is liable for civil damages on account of any injury to a person or property caused by the acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter.

42 Pa.C.S. § 8545 (official immunity).  In other words, an employee who is acting within the scope of his or her employment will be immune if the local agency is immune.  However, Section 8545 will not apply "[i]n any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or wilful misconduct."  42 Pa.C.S. § 8550.  Wilful misconduct has been recognized as "a demanding level of fault."  Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006).  The Pennsylvania Supreme Court has defined willful misconduct as "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied."  Id.  (citing Renk v. City of Pittsburgh, 641 A.2d 289, 293 (1994)).  "Otherwise stated, the term willful misconduct is synonymous with the term intentional tort."  Id. (quotations and citations omitted).  Because the negligent infliction of emotional distress is predicated on negligence and not intent, the wilful misconduct exception to official immunity cannot apply here.  See, e.g., Cruz ex rel. Alvarez v. City of Philadelphia, No. 07-493, 2008 WL 4347529, at *12 (E.D. Pa. Sep. 23, 2008) (barring

plaintiffs' claim for negligent infliction of emotional distress against the defendants); Heckensweiler, 517 F. Supp. 2d at 720-21 (dismissing negligent infliction of emotional distress claims against two township police officers based on official immunity and reasoning that the wilful misconduct exception cannot apply to acts of negligence); Dashner v. Riedey, No. 99-2124, 2004 WL 203193, at *8 (E.D. Pa. Jan. 28, 2004) ("The allegation of negligence inherent in a claim for negligent infliction of emotional distress contradicts the willful misconduct required to defeat the state's grant of immunity to its officials or subdivisions."); Burella ex rel. Burella v. City of Philadelphia, No. 00-884, 2003 WL 23469295, at *14 (E.D. Pa. Dec. 17, 2003) (dismissing negligent infliction claim as to city police officers on the basis of official immunity); Webb v. City of Philadelphia, No. 98-2261, 1999 WL 793466, at *9 (E.D. Pa. Oct. 6, 1999) (finding that deputy sheriffs were immune to negligent infliction of emotional distress claims); and Moser v. Bascelli, 865 F. Supp. 249, 253-54 (E.D. Pa. 1994) (finding that police officer was immune from negligent infliction of emotional distress claim but not immune from *intentional* infliction of emotional distress claim under Section 8550) (emphasis added).  Having determined that the Borough is immune from liability at count six, the Court is compelled to find that Defendants Mann and Zimmerman are also immune because the "wilful conduct" exception under Section 8550 does not apply and they are, therefore, entitled to the same immunity as the Borough under the Political Subdivision Tort Claims Act.  Thus, count six is dismissed as to all Defendants.